IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| CHARITY L. WIERMAN | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:09-CV-04029-NKL |
| | ) |
| CASEY'S GENERAL STORES, INC., et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**O R D E R**

Pending before the Court is a motion for summary judgment filed by Defendant Casey's General Stores, Inc. [Doc # 29], on Plaintiff Charity Wierman's ("Wierman") claims of pregnancy discrimination and retaliation in violation of Title VII; sex discrimination in violation of Missouri state law; and a violation of the Family and Medical Leave Act ("FMLA"). Casey's General Stores, Inc., asserts that it cannot be liable as a matter of law because it never employed Wierman. Also pending before the Court is a motion for summary judgment [Doc. # 30] filed by Defendants Casey's General Stores, Inc., and Casey's Marketing Company ("Casey's").

Wierman does not contest that she is not employed by Casey's General Stores, Inc. As a result, the Court grants summary judgment in favor of Casey's General Stores, Inc. Further, for the reasons stated below, Casey's motion for summary judgment [Doc. # 30] is also granted.

1

**I.   Factual background[1]**

In March 2006, Wierman began her employment for Casey's as a cashier at the Casey's in California, Missouri. She became the store's manager in August 2006 and a year later became store manager of the Casey's in Eldon, Missouri. Under Casey's corporate structure, store managers are overseen by area managers. From approximately October 2007 through March 2008, Lisa Hercules ("Hercules") supervised Wierman as her area manager.

In December 2007, Wierman testified she called Hercules to resign, stating that she was resigning because she believed the district manager, Jeff Clark, did not like her. However, Wierman testified that she rescinded her resignation because she found out she was pregnant. On December 27, 2007, Lisa Hercules, issued a corrective action related to Wierman's unscheduled absences for that month. "Corrective actions" are forms used for employee discipline. As a result of the corrective action, Wierman was suspended for five days without pay and was allowed to rescind her resignation. In January 2008, Wierman informed Hercules that she was pregnant.

On April 1, 2008, Wierman's immediate supervisor, Gregory Johnson ("Johnson"), was promoted to area manager, succeeding Hercules. Johnson visited the Eldon store on

---

[1]The Court has considered the parties' statements of undisputed fact which are supported by evidence. The Court deems admitted both parties' fact statements which have not been directly controverted. See Local Rule 56.1 ("Each fact in dispute shall be set forth in a separate paragraph, . . . and, if applicable, shall state the paragraph number in the movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."). In considering each parties' motion, the Court has drawn all inferences in favor of Wierman, the non-movant. The Court's findings pursuant to Rule 56.1, deeming certain facts admitted, are reflected in the facts set forth below.

April 1, 11, 15, 18, 25, and 30 and then on May 6. On April 30, Johnson reviewed the store's video surveillance and testified that he saw Wierman on the videos consuming food without ringing it up on the cash register and paying for it. He also testified that he noticed absenteeism and tardiness in violation of Casey's policies and that Wierman failed to complete mid-day cigarette audits. Johnson terminated Wierman's employment on May 6, 2008.

  A. **Disciplinary Actions and Wierman's Termination**

    1. **Wierman's Food and Beverage Consumption**

Casey's asserts that Wierman violated its policies with regard to food consumption. Johnson testified that violation of this policy was the main reason why he terminated Wierman. Wierman admits that as a store manager she was responsible for knowing and implementing Casey's policies in her store. Pursuant to Casey's policy, "[a]ll merchandise purchased by an employee must be paid for before consumption, use, or removal from the store." Doc. # 28, Ex. 4. While working a scheduled shift, Casey's employees are allowed free fountain drinks and can purchase Casey's prepared foods at a 50% discount with a maximum daily discount of $2.50. Casey's employees were required to pay full price for pre-packaged items sold in the store.

Casey's requires all items to be rung up on the cash register even if the item is free. As to items which are not free, they must be paid for before consumption. Casey's also requires that two receipts of such transactions are to be printed, one that the employee signs and places in a shift audit envelope and another kept by the employee for her records. While

3

Casey's reserves the right to ask for a receipt from employees, Casey's policy also provides that "[a]n employee who fails to properly pay for products as required by this policy, or who fails to properly handle his or her receipts, will be subject to immediate disciplinary action up to and including termination." Doc. # 28, Ex. 3.

On April 30 when he visited the Eldon store, Johnson reviewed Casey's security video for April 21 and 29. Casey's asserts that the April 21 video shows Wierman consuming a fountain drink, a bottle of soda from a cooler, and a Hostess snack without first ringing them up or paying for them. In response, Wierman submitted a declaration in which she states that she paid for the bottle from the cooler and the Hostess bakery product. Wierman was not sure when she paid for the items but it was her practice to do so before the end of a shift. Wierman stated that the fountain drink she consumed was free under Casey's policy. Wierman does not allege that she rang these items up on the cash register, prepared two receipts and paid for the Hostess bakery product and the bottle from the cooler prior to consumption pursuant to Casey's policy.

Casey's asserts that the April 29 video shows Wierman consuming a fountain drink without ringing it up, eating fresh donuts from a donut case, and eating a breakfast pizza without ringing it up. Wierman responds that the video is too grainy to see what she ate, whether it was a stale or fresh item, and that it was her practice to pay for prepared items at the first available opportunity or at the end of her shift. Wierman testified that, though it was against Casey's policy, it was common practice to eat stale items without paying for them and that prior area managers allowed such conduct. Wierman does not allege that she paid

4

for the items, or rung them up on the cash register even if for free, prior to consumption pursuant to Casey's policy.

Johnson testified that after reviewing the video he confirmed that Wierman had not rung-up or paid for the items she consumed by reviewing Casey's electronic journal and reviewing receipts.

In a corrective action issued to Wierman on her termination but dated May 2, 2008, Johnson stated that on the week of April 21 through April 25, Wierman "was observed by video surveillance taking a donut per day and/or cookie per day." Doc. # 36, Ex. G. He also stated that she did not use the register to ring up drinks under the employee discount and that there were no receipts for the merchandise consumed. Johnson further explained that the "scope and magnitude of this violation warrants immediate dismissal." *Id.* He did not mention at that time Wierman's consumption of the Hostess cupcakes and bottled soda.

With regard to the corrective action that resulted in her termination, Wierman disputes Johnson's statement that she took a donut and/or cookie per day. Although she admitted in her deposition that once or twice she may have failed to pay for an item, in her declaration, Wierman states that with regard to the April 21 video she does not actually remember whether she paid for the items, but she did testify that she always paid full price for packaged items before the end of her shift. With regard to the April 29 video, Wierman states in her declaration that it was her custom and practice to pay for prepared items at the first available opportunity or before she left the store at the end of a shift.

In response to Casey's allegations regarding her food consumption, Wierman notes

5

that on May 1, 2008, Johnson contacted Casey's Human Resource department ("HR") and left a voicemail. He stated that he wanted to terminate Wierman, noting that although she was going to be going on FMLA leave due to her pregnancy, Wierman was coming in late and not notifying him. He also explained that he reviewed the surveillance video and noticed that Wierman was taking bakery items and drinks without paying for them. An HR representative left Johnson a return voicemail advising him to get Wierman's side of the story and give her an opportunity to explain her behavior. However, it is undisputed that Johnson did not give Wierman an opportunity to explain her behavior before he terminated her. It is also undisputed that Johnson did not ask Wierman to produce any receipts at the time he terminated her and Wierman has not produced any such receipts in this litigation. It is further undisputed that Johnson reviewed the shift audit envelope and did not find a signed receipt from Wierman pursuant to Casey's policies for the products she admittedly consumed.

### 2. Wierman's Absences and Tardiness

Casey's asserts that Wierman violated its policies with regard to absences and tardiness. When Johnson visited the store on April 30, Wierman had not shown up for her scheduled shift on that morning. The parties dispute whether Wierman notified Johnson in advance that she would not be in the store that day. The parties agree that on April 29, Wierman worked extra by filling in for an employee in the kitchen who missed work because of a death in the family. As a store manager, if an employee could not work a shift, Wierman was responsible for finding employees to fill in a shift or she was responsible for working

6

the shift herself if she could not find anyone. Wierman did find a replacement for April 30th when she could not come in. Wierman believes Johnson's arrival to review the store video on April 30 when she was not going to be in the store is suspicious.

In reviewing the video on April 30, Johnson testified that Wierman was also tardy on April 21, 25, and 28. Wierman admits she was tardy on these dates but the parties dispute the length of the tardiness. Wierman testified that her tardiness was due to morning sickness and that she did not notify Johnson that she would be late. Johnson testified that he was not aware that her tardiness was related to morning sickness. A corrective action, dated April 30, 2008, but signed on May 6, 2008, was issued by Johnson as a written warning. It provided that Wierman demonstrated excessive absenteeism and tardiness. Johnson also stated that Wierman was tardy on April 21, 25, and 28 and did not notify her supervisor. He also stated that she was absent on April 30 and left early on May 2.

### 3. Wierman's Cigarette Audits

In mid-April 2008, Wierman testified that she asked Johnson if she could have her assistants do cigarette counts. Pursuant to Casey's policy, managers were to conduct cigarette audits daily of cigarettes in a case behind the register. A stool was needed to reach some of the cigarettes that were up high. Wierman testified that she told Johnson that she was afraid of getting on a step stool when she was five to six months pregnant, though her doctor never told her that she could not get on the stool. Wierman testified that Johnson told her she still had to do her job and that she had her assistant managers complete the audits by using the stool.

7

On May 6, 2008, Johnson also issued to Wierman a corrective action dated April 29, 2008, stating that because the cigarette totals were off, he requested Wierman conduct mid-day audits until further notice. Johnson noted in his corrective action that Wierman failed to conduct mid-day audits on April 24 and 25 and failed to pass on to other members of management the responsibility to do such audits.

**B.    FMLA Leave**

In January 2008, Wierman informed Casey's that she was pregnant. Casey's policies required Wierman to notify her supervisor of any absences, whether pregnancy related or not. Wierman contacted HR in January 2008 about her pregnancy and asked about leave under the FMLA. Given that Wierman was only two-months pregnant, the HR representative told her to call back when she was closer to her due date. Wierman testified that she had a problem with HR telling her to wait until closer to her due date because she stated: "I felt like when you found out a disability, that you automatically got FMLA to cover – to protect you from getting fired." Doc. # 36, Ex. A, 49:1-6.

Because of Wierman's attendance issues in early 2008, Wierman's prior supervisor, Lisa Hercules, testified that in late March 2008 she contacted HR about intermittent FMLA leave for Wierman.

On April 4, HR sent Wierman FMLA paperwork to be returned by April 25, requesting Wierman to fill out a request for leave form and obtain a certification of health care provider to demonstrate that a serious health condition made Wierman unable to perform the essential functions of her job. In the same letter sent by HR, it was explained that HR

8

understood Wierman would be working limited hours due to her conditions/restrictions and that "beginning on March 6, 2008, any hours below the required 90 hours per pay period will be deducted from your 540 hours of available FMLA time." Doc. # 36, Ex. I. When Wierman did not return her paperwork by the due date, HR resent it, requesting that she return it by May 15. Wierman was terminated on May 6 and never returned the paperwork sought by Casey's.

Shortly after Johnson became Wierman's supervisor, she told him she was pregnant and would need time off for doctor's appointments. Wierman recalls that Johnson's response was that this was "okay." When asked whether Johnson ever said anything to lead Wierman to believe that her pregnancy was a problem for Johnson, she responded that Johnson "said that I pretty much needed to do my job more, and that I needed to be at work as much as I possibly could." Doc. # 36, Ex. A, 59:23-24. Johnson further approved the days Wierman requested off.

While working at Casey's, Wierman's doctor did not place any medical restrictions on her during her pregnancy.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

Wierman has brought an action against Casey's alleging that her termination while pregnant was a violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq. ("PDA") and Title VII; the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. 213.055; and the FMLA.

## III. Discussion

### A. Pregnancy Discrimination Claim

Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e et seq., prohibits discrimination in employment on the basis of an individual's sex. As amended by the PDA, the sex discrimination under Title VII includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k); *see also Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir.

1998). Missouri state law similarly prohibits discrimination based upon pregnancy.[2] *See* Mo. Rev. Stat. § 213.055; *Self v. Midwest Orthopedics Foot & Ankle, P.C.*, 272 S.W.3d 364, 366 (Mo. App. W.D. 2008) ("The MHRA's prohibition of discrimination on the basis of sex includes discrimination based on an employee's pregnancy . . . .").

In employment discrimination cases, a plaintiff can survive summary judgment by presenting direct evidence of discrimination or by creating "the requisite inference of discrimination, including sufficient evidence of pretext, under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127 (8th Cir. 2008) (internal quotations omitted).

Because Wierman does not argue that she has direct evidence of discrimination, the Court analyzes her Title VII claims under the traditional burden-shifting analysis of *McDonnell Douglas*. Under this framework, Wierman bears the initial burden of establishing a prima facie case of discrimination. If a prima facie case is established, a burden of production then shifts to Casey's to articulate a legitimate, nondiscriminatory reason for its termination of Wierman. If Casey's makes such a showing, Wierman must then demonstrate that the stated nondiscriminatory rationale was a mere pretext for discrimination. *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 746 (8th Cir. 2009).

---

[2] MHRA claims are analyzed under the same standards as federal employment discrimination claims. *Fast v. S. Union Co.*, 149 F.3d 885, 889 (8th Cir. 1998).
.

### 1. Prima Facie Case

"The elements necessary to establish a prima facie case vary according to the circumstances of the alleged discrimination." *Favors v. Fisher*, 13 F.3d 1235, 1237 (8th Cir. 1994). In this case, Wierman may satisfy her burden of establishing a prima facie case of pregnancy discrimination by showing: (1) she was a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was discharged under circumstances giving rise to an inference of discrimination. *Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998); *see also Piantandia v. Wyman Ctr., Inc.*, 827 F. Supp. 1226, 1240 (E.D. Mo. 1996).

For purposes of summary judgment, Casey's does not dispute the first three elements. Wierman argues that she satisfies the last element of her prima facie case because she was discharged under circumstances giving rise to an inference of discrimination. The Court assumes without deciding that Wierman can satisfy her prima facie burden.

### 2. Burden Shifting Analysis

Even if Wierman could satisfy her prima facie case, Casey's has come forward with legitimate, nondiscriminatory reasons for Wierman's discharge. Casey's terminated Wierman primarily for her violations of company policy with regard to food consumption. However, contributing to Wierman's termination were her unexcused absences and failure to conduct proper cigarette audits. *See Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 610 (8th Cir. 2006) (finding employer's reason for terminating employee for knowingly violating company policy by offering discounts a legitimate, nondiscriminatory reason for

12

termination). Accordingly, the Court concludes that Casey's presented a legitimate, nondiscriminatory reason for Wierman's termination.

To rebut the legitimate, nondiscriminatory reasons set forth by Casey's, Wierman "must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions." *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 n.8 (8th Cir. 1994). Wierman has not done so in this case

This case turns on whether Wierman presented a trial-worthy claim of pretext. *Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996) ("This burden will not be met by simply showing that the reason advanced by the employer is false; rather [plaintiff] must demonstrate that a discriminatory animus lies behind defendant's neutral explanations."). The Court concludes that she did not.

To prevail on her claim, Wierman must show "that she was treated differently because of her pregnancy or a pregnancy-related condition." *Deneen*, 132 F.3d at 435. The PDA "does not create substantive rights to preferential treatment." *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997). "On the contrary, the PDA allows employers [to] treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Deneen*, 132 F.3d at 436-37.

Wierman does not point to any employee who was treated more favorably or less favorably than herself by Johnson, the decision maker in this case. Indeed, Wierman does not mention any employees, other than her testimony that her prior area supervisors allowed

13

employees to eat stale food without first paying for it. *See Britton v. City of Poplar Bluff*, 244 F.3d 994, 998 (8th Cir. 2001) ("When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." (internal quotations omitted)). Wierman does not deny that she consumed items that were not stale, including a bottle of soda as portrayed in the April 21 video. She argues that she paid for it. There is no evidence that Johnson did not honestly believe that she took food in violation of Casey's policies. *McCullough v. Univ. of Ark. for Med. Sci.*, 559 F.3d 855, 861-62 (8th Cir. 2009) ("The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.").

There is no evidence adduced by Wierman that similarly situated employees were not terminated by Johnson for such conduct. The only evidence of other employees put forth in this case is a corrective action by Johnson against a female manager who he terminated on April 7, 2008, for voiding pizza transactions and then ringing them up under a store coupon. Wierman tries to distinguish this termination as not similar but offers no evidence of treatment of any other employees supervised by Johnson. Moreover, Wierman also does not present evidence of any similarly situated employees who were not disciplined by Johnson for absences for which they failed to notify their supervisor or evidence of similarly situated employees who were not disciplined for failing to conduct cigarette audits.

The evidence in this case demonstrates that Johnson expected from Wierman the same performance as any other store manager. Wierman had an obligation to notify her supervisor

14

of absences or tardiness. Wierman was obligated to ring up items before she consumed them and pay for them if required. She was obligated to print two receipts and sign one of them and leave it in the shift audit envelope. Although Wierman claims she paid for the items she consumed on the April videos, she does not dispute that Johnson did not find receipts in the shift audit envelope and she has produced none.

Rather, Wierman claims that Johnson's stated reason for her termination - that she ate a donut and/or cookie per day - was not the true reason. She argues that Casey's explanation for what she ate changed over time from a donut or cookie to a bottle of soda and a Hostess snack. These insignificant changes, however, are not sufficient evidence to make a triable issue as to pretext. *See, e.g.*, *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827 (8th Cir. 2002) (explaining that pointing out additional aspects of the same behavior is not probative of pretext).

Moreover, Casey's explanation for the reason it terminated Wierman is supported by the evidence in this case. When asked whether Johnson ever said anything to lead Wierman to believe that her pregnancy was a problem for Johnson, she responded that Johnson "said that I pretty much needed to do my job more, and that I needed to be at work as much as I possibly could." Doc. # 36, Ex. A, 59:23-24. Moreover, Wierman never presented any restrictions from her doctor with regard to her abilities to work as a manager for Casey's.

Wierman could not identify any statements made by Johnson, only her speculation that he terminated her because of her pregnancy. Wierman speculates that the reason Johnson came in on April 30 to check the security video was to find a legitimate reason to

terminate her. She speculates Johnson should have asked her for her receipts and that he should have followed the voicemail he received from HR and asked Wierman to explain her conduct. This speculation is insufficient to demonstrate a triable issue of fact.

Indeed, the evidence in *Quick* adduced by the plaintiff in that case was that she was terminated shortly after she returned from maternity leave and that management had previously criticized her for taking twelve weeks of maternity leave and there was a comment by management that he did not expect the plaintiff to return from maternity leave. 441 F.3d at 609-10. The defendant's evidence in *Quick* was that it terminated the plaintiff after it discovered her violation of its policies by offering discounts that had been discontinued. *Id.* The Eighth Circuit upheld that summary judgment and Wierman has even fewer facts to support her assertion that there was discrimination based on her pregnancy. *See id.* at 610. Wierman has not presented sufficient evidence to make a triable fact as to pretext. Accordingly, summary judgment in favor of Casey's on this claim is warranted.

### B. FMLA Claim

Wierman also claims that Casey's terminated her in retaliation for taking FMLA leave. Similar to other discrimination claims, Wierman can prove FMLA retaliation circumstantially by using the *McDonnell Douglas* burden-shifting test. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). To establish a prima facie case of retaliation, Wierman must demonstrate: (1) she exercised rights afforded by the act; (2) she suffered an adverse employment action; and (3) there was a causal connection between her exercise of rights and the adverse employment action. *Id.* at 865. Once Wierman establishes her prima

16

facie case, the burden shifts to Casey's to articulate a legitimate, nondiscriminatory reason for their decision to terminate Wierman. *Id.* Then, the burden shifts back to Wierman to demonstrate that Casey's reason is pretextual. *Id.*

Casey's argues that Wierman cannot satisfy the first element of her prima facie case, that she exercised her rights afforded by the act. It is undisputed that Wierman did not return the certification required by Casey's. However, there is also evidence that HR considered Wierman as eligible to receive FMLA leave because it stated in the same letter in which it requested the certification that HR understood Wierman would be working limited hours due to her restrictions and that "beginning on March 6, 2008, any hours below the required 90 hours per pay period will be deducted from your 540 hours of available FMLA time." However, the Court does not need to decide this issue. Instead it will assume that Wierman can satisfy her prima facie case.

The Court concludes, for the same reasons stated above, that Casey's had a legitimate, nondiscriminatory reason for terminating Wierman, and Wierman has failed to support her contention that the reason was pretextual. *See Armstrong v. Sys. Unlimited, Inc.*, 75 Fed. Appx. 550 (8th Cir. 2003) (concluding that plaintiff had insufficient evidence to support her pregnancy discrimination claim and concluding that her claim for FMLA retaliation similarly failed). Accordingly, Wierman's retaliation claim fails, and summary judgment in favor of Casey's is properly granted.

## IV. Conclusion

Accordingly, it is hereby ORDERED that the motion for summary judgment filed by

Defendant Casey's General Stores, Inc. [Doc # 29] is GRANTED. It is further ORDERED that the motion for summary judgment filed by Casey's General Stores, Inc., and Casey's Marketing Company [Doc. # 30] is GRANTED.

  s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: March 15, 2010  
Jefferson City, Missouri